# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TONY WESLEY SLONE,
     Plaintiff

     vs                                     Case No. 1:09-cv-705

COMMISSIONER OF                     District Judge Herman J. Weber
SOCIAL SECURITY,                 Magistrate Judge J. Gregory Wehrman
     Defendant

---

## REPORT AND RECOMMENDATIONS

---

Plaintiff brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3)  for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  This matter is before the Court on Plaintiff's Statement of Errors (Doc. 8) and the Commissioner's Memorandum in Opposition. (Doc. 13).

## PROCEDURAL HISTORY

Plaintiff, Tony Wesley Slone, filed an application for DIB on May 22, 2007 and an application for SSI on November 27, 2007, alleging disability since December 13, 1996, due to back problem, breathing problems and diabetes.  (Tr. 110-13, 116-19; 143).  Plaintiff's applications were denied initially and upon reconsideration.  (Tr. 48-51, 56-58, 63-65, 67-69).  Plaintiff requested and was granted a de novo hearing before an administrative law judge (ALJ).  (Tr. 70-78).  On February 10, 2009, Plaintiff, who was represented by counsel, appeared and

testified at a video hearing before ALJ Steven A. De Monbreum. (Tr. 25-38). A vocational

expert, Annmarie E. Cash, also appeared and testified at the hearing. (Tr. 39-45).

On April 1, 2009, the ALJ issued a decision denying Plaintiff's DIB and SSI

applications. The ALJ determined that Plaintiff suffers from the severe impairments of

degenerative disc disease, rotator cuff tear, and diabetes with neuropathy, but that such

impairments do not alone or in combination meet or equal the level of severity described in the

Listing of Impairments. (Tr. 11, 13). According to the ALJ, Plaintiff retains the residual

functional capacity (RFC) for light work with the following restrictions:

> [Plaintiff] could lift/carry 20 pounds occasionally and 10 pounds frequently,
> stand/walk for 6 hours total out of 8, and sit for 6 hours total out of 8. [Plaintiff]
> would be limited to tasks requiring no more than occasional climbing of ramps or
> stairs; and, would never be able to kneel, crouch, crawl, climb ladders, ropes, or
> scaffolds, or perform overhead reaching. He could frequently balance or stoop.
> He would need to avoid exposure to temperature extremes, hazardous machinery,
> or unprotected heights.

(Tr. 13). The ALJ determined that Plaintiff's allegations regarding his limitations are not totally

credible. (Tr. 13-17). The ALJ next determined that Plaintiff is unable to perform his past

relevant work as an auto body repairer. (Tr. 17). The ALJ further found that Plaintiff can

perform a number of jobs which exist in representative numbers in the national economy. (Tr.

18). Consequently, the ALJ concluded that Plaintiff is not disabled under the Act. (Tr. 19). The

Appeals Council denied Plaintiff's request for review (Tr. 1-4), making the decision of the ALJ

the final administrative decision of the Commissioner.

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified during the administrative hearing that he worked in auto body repair as a subcontractor, and was paid in cash.  He estimated that he made $500 to $600 per month.  He stopped working about a year prior to the hearing because he could not lift heavy objects.  He testified that he can no longer lift due to his back and shoulder pain.  His back pain is aggravated by standing or walking for extended periods.  He does not use an assistive device.

Plaintiff also testified to bilateral knee pain and numbness/tingling in the lower extremities.  Plaintiff testified that he has a rotator cuff tear in the left arm also.  He cannot read the newspaper due to blurry vision.  Plaintiff testified that he has no continuing problems from his prior heart surgery.  His blood pressure is controlled with medication.  Plaintiff testified that he has carpal tunnel syndrome and that he has difficulty holding objects.  He further testified that he has had no surgery or current treatment.

As to his activities of daily living, Plaintiff testified that he is able to perform some household chores, such as sweeping the floor and washing the dishes.  He reported that he is able to prepare meals and drive.  He also noted that he drove his parents around.  He does not participate in social groups or activities.  He further testified that his wife has been telling him recently that he has a short fuse.  Plaintiff testified that he went to his grandson's basketball game and that it was hard for him to sit on the bleachers.  He further testified that he goes to the store unless he is having difficulty getting out of the chair and off the bed.

Plaintiff estimated that he could stand for maybe 20 or 30 minutes and sometimes 45 minutes to an hour at a time.  Plaintiff also estimated that he could lift about 30 or 40 pounds.  He can sit for about 40 minutes before he need to stand up and move around.  (Tr. 25-38).

3

## MEDICAL RECORD

The record contains treatment notes from Burlington Family Care Center dated May 15, 2007 through January 5, 2009.  (Tr. 229-85, 367-418).  Plaintiff treated with Certified Nurse Practitioner ("CNP") Dee Freeman.  On May 15, 2007, Plaintiff  was seen for numbness and tingling in his lower legs and feet.  (Tr. 369-70).  He reported being able to walk about 2 blocks.  *Id.*  After walking, he had a burning sensation in his feet.  *Id.*

Plaintiff saw Richard Ansinelli, M.D., a cardiologist, in May 2007, complaining of a 4-5 month history of a sticking sensation in his chest with associated shortness of breath, nausea and thumbing of his heartbeat associated with paraesthesias and discomfort in his feet.  (Tr. 201-17, 286-302, 326-42).  Plaintiff reported it was relatively unpredictable but was happening daily and becoming worse.  *Id.*  Plaintiff underwent a stress test on May 21, 2007, which showed evidence of transient ischemic dilation with no reversible ischemia and an ejection fraction of 63%.  (Tr. 205, 212-13).  Dr. Ansinelli noted Plaintiff's risk factors for coronary artery disease included smoking, hypertension, diabetes and hyperlipidemia.  An x-ray of Plaintiff's chest taken on May 29, 2007, showed no pleural effusions or pulmonary masses.  (Tr. 333).  Dr. Ansinelli performed a heart catheterization with coronary arteriograms on May 30, 2007, and noted that Plaintiff had minor coronary disease with normal LV function.  Dr. Ansinelli reassured Plaintiff that his symptoms were non-cardiac and his stress test was falsely abnormal.  (Tr. 201).  Dr. Ansinelli contributed the Plaintiff's leg pain to diabetic neuropathy. (Tr. 332).

State agency reviewing psychologist, Steven J. Meyer, Ph.D., completed a Psychiatric Review Technique on May 22, 2007.  (Tr. 311-24).  According to Dr. Meyer, Plaintiff's alleged mental impairments were not severe.  *Id.*  Dr. Meyer opined that Plaintiff would have mild

restrictions of activities of daily living, mild difficulty in maintaining social functioning, mild difficulty in maintaining concentration, persistence or pace and no episodes of decompensation. Dr. Meyer concluded that the medical evidence "does not support a severe limit for psych" with medication compliance based on the medical evidence as a whole.  Dr. Meyer gave additional consideration to Plaintiff's "no psych history", out-patient office visit notes, and consistency of this information with Plaintiff's work history, no special education and field office observations. *Id.*

On June 4, 2007, CNP Freeman reported Plaintiff was diagnosed with diabetes, peripheral neuropathy, and atypical chest pain. (Tr. 260).  She requested he be considered for a medical card, given his multitude of problems. *Id.*

On June 6, 2007, CNP Freeman completed a Basic Medical form for the local department of job and family services. (Tr. 242-44).  She reported that Plaintiff had out of control diabetes. *Id.*  CNP Freeman reported that Plaintiff could not stand/walk for any significant time, but could sit for 8 hours of an 8 hour day. *Id.*  She further noted he was extremely limited in pushing/pulling, bending, reaching, handling, and repetitive foot movements.  *Id.*

Plaintiff was examined by state agency consulting physician, David G. Provaznik, D.O., on July 20, 2007. (Tr. 227-28, 303-10).  Plaintiff's chief complaint included back pain.  *Id.*  He reported his back has been "messed up" since 1979.  *Id.*  He was apparently unloading a semi when he slipped and fell off the back.  *Id.*  He has had no surgery or need for surgery.  *Id.*  He reported he gets a tremendous knot in his coccyx area if he has been on his feet too long, aggravating it.  *Id.*  Plaintiff also reported pain when he walks.  *Id.*  He reported his pain is better if he stays off his feet.  *Id.*  Pain is worse if he is up on his feet, moving around, ambulating.  *Id.*

Plaintiff further complained of bilateral knee pain. *Id.* He stated his knees are thick, they pop and crack and hurt just generally like a toothache. *Id.* Plaintiff reported it feels like there is sand grinding in between the bones. *Id.* He reported his right knee does swell, this has been going on for some time but he cannot relate how long. *Id.* His knee pain has not been evaluated, nor has he received any treatment. *Id.* His knees occasionally will give out on him and kind of buckle, but he denied falling. *Id.* Plaintiff's third complaint was diabetes with elevated blood sugars. *Id.* Examination revealed that Plaintiff was able to toe-gait and heel-gait. *Id.* He was able to get up from a sitting and a supine position without difficulty. *Id.* Sensation is intact dermatomally. *Id.* He was somewhat stiff. *Id.* Plaintiff demonstrated some mild joint deformity consistent with arthritis, with synovial thickening. *Id.* He had some crepitance with range of motion, but negative anterior drawer, negative varus valgus stress bilaterally. *Id.* His leg lengths were equal. *Id.* He ambulates without assistance or device. *Id.* Dr. Provaznik found bilateral degenerative changes of the knees, obesity and chronic low back pain. *Id.* Dr. Provaznik concluded that Plaintiff's physical activity would be limited somewhat by his knees. *Id.*

On July 30, 2007, state agency reviewing physician, W. Jerry McCloud, M.D., reported that Plaintiff could occasionally lift/carry 20 pounds and 10 pounds frequently. (Tr. 219-26). Dr. McCloud also reported that Plaintiff could stand/walk or sit for 6 hours total of an 8 hour day. *Id.* According to Dr. McCloud, Plaintiff should never climb ladders, ropes or scaffolds and never kneel, crouch or crawl. *Id.* He could only occasionally climb ramps or stairs. *Id.* Dr. McCloud's assessment was affirmed by Kathryn Drew, M.D., upon her review of the medical evidence on October 30, 2007. (Tr. 325).

6

On August 20, 2007, CNP Freeman diagnosed anxiety, depression, insomnia and arthalgia. (Tr. 235-36). When seen for follow-up on his diabetes on October 3, 2007, Plaintiff reported feeling shaky and weak, but he had forgotten to take his medication. (Tr. 233-34). CNP Freeman noted Plaintiff suffered from coronary artery disease, back pain, insomnia and diabetes. *Id.*

In October 2008, Plaintiff complained of pain in his right shoulder and elbow with decreased range of motion. (Tr. 398-400). CNP Freeman ordered testing. *Id.* An MRI of Plaintiff's right shoulder taken on October 29, 2008, showed marked lymphadenopathy in the right axilla, rotator cuff tendinopathy with partial surface tear and bursitis. (Tr. 359-60). A lumbar MRI taken on October 31, 2008, revealed a small disc herniation at L5/S1. (Tr. 361).

The last treatment note from CNP Freeman, dated January 5, 2009, showed that Plaintiff's diabetes was better but still out of control. (Tr. 390-91). CNP Freeman noted that Plaintiff is not a surgical candidate for his back pain and she recommended a pain clinic. *Id.*

On January 29, 2009, CNP Freeman reported that Plaintiff could lift 10 pounds occasionally (with left arm). (Tr. 419-22). She further noted that he should only stand/walk for 30 minutes at a time, 1-2 hours of an eight hour day; sit for 30 minute at a time, 2-4 hours of an eight hour day and could never climb, balance, stoop, kneel, crouch or crawl. *Id.* CNP Freeman also reported that Plaintiff would have limitations in reaching, handling, feeling and pushing/pulling. *Id.* She reported this to be due to his neuropathy and herniated disc. *Id.* She further noted he should avoid temperature extremes, moving machinery and vibration. *Id.*

## JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Social Security*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**DISCUSSION**

A.       **Statement of Errors**

Plaintiff asserts that the ALJ erred in several respects.  He first argues that the ALJ failed to give controlling weight to the opinion of treating CNP, Dee Freeman.  Plaintiff's second argument is that the ALJ failed to properly consider the combined impact of his impairments.  Third, Plaintiff contends that the ALJ erred in evaluating his credibility and subjective reports of pain.  Finally, Plaintiff contends the ALJ's decision is not supported by substantial evidence.

B.       **Applicable Law**

The following principles of law control resolution of the issues raised in this case.  To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).  A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

9

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations.  20 C.F.R. §§ 404.1520, 416.920[1].  First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends.  Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends.  Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded.  20 C.F.R. § 404.1520(d).  Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment.  If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform.  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  Social Security Ruling ("SSR") 96-6p at *2.  Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source.  *See id*. at *2-*3.  The Regulations explain, "In deciding whether you

_____

[1] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI/DIB Regulations.

10

are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. §404.1527(b).  To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in §404.1527(d) including, at a minium, the factors of supportability, consistency, and specialization.  *See* 20 C.F.R. §404.1527(f); *see also* Ruling 96-6p at *2-*3.

The Act requires the Commissioner to consider the combined effects of impairments that individually may be nonsevere, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability.  *Foster v. Bowen,* 853 F.2d 483, 490 (6th Cir. 1988) (citation omitted).  A disability may result from multiple impairments, no one of which alone would constitute a full disability.  *Loy v. Secretary of Health and Human Services,* 901 F.2d 1306 (6th Cir. 1990).  An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a "combination of impairments" in finding that the Plaintiff does not meet the Listings.  *Id.* (citation omitted).

Pain or other symptoms may be severe enough to constitute a disability, if caused by a medical impairment.  *See Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981)(pain alone may constitute a disability); *see also* 20 C.F.R. §404.1529.  When evaluating pain or other symptoms, the Commissioner's Regulations require ALJs to consider all the evidence including medical history, medical signs and laboratory findings, the claimant's statements, and treating and other medical source opinions.  20 C.F.R. §404.1529(c)(1).  Although the Regulations concerning pain and other symptoms are lengthy, the Sixth Circuit Court of Appeals has enunciated the applicable standard in "a more succinct...." two-part analysis.  *Felisky v. Bowen*,

35 F.3d 1027, 1038 (6th Cir. 1994). Part one considers "whether there is objective medical evidence of an underlying medical condition...." *Felisky*, 35 F.3d at 1038 (quoting *Duncan*, 801 F.2d at 853). If such objective medical evidence exists, then part two requires consideration of two alternative questions:

1.  Whether objective medical evidence confirms the severity of the alleged pain [or other symptom] arising from the condition; or

2.  Whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain [or other symptom].

*Felisky*, 35 F.3d at 1038-39 (quoting *Duncan*, 801 F.2d at 853).

Neither *Felisky's* two-part test nor the Regulations upon which it is based require objective medical evidence of pain itself. *Felisky*, 35 F.3d at 1039. The Regulations require ALJs to consider a list of factors including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications taken to alleviate symptoms; treatment, other than medication, obtained for symptom relief; any measures used to alleviate pain (e.g., lying flat, standing 15 or twenty minutes every hour, sleeping on a board, etc.); and other factors concerning the claimant's functional limitations. 20 C.F.R. §404.1529(c)(3)(I)-(vii); *see* Social Security Ruling 96-7p.

### C. **Analysis**

Plaintiff's first assignment of error is that the ALJ improperly dismissed the opinion and RFC findings of treating CNP Freeman. The ALJ considered and gave very little weight to CNP Freeman's opinion because her assessment of limitations is too restrictive. (Tr. 17). The ALJ further noted that CNP Freeman's opinion is based mostly on Plaintiff's self-reported limitations

and treatment was not consistent with limitations.  *Id.*  The ALJ further explained that CNP

Freeman is a nurse practitioner, not an actual physician.  *Id.*

Nurse practitioners are not included in the list of acceptable medical sources found in the

Commissioner's regulations. 20 C.F.R. § 404.1513(a).  The opinions of nurse practitioners, even

those who treat a claimant, are therefore not entitled to the controlling weight or deference to

which the opinions of treating physicians are ordinarily entitled.  *See* 20 C.F.R. § 404.1527(d).

However, evidence from other sources, including nurse practitioners, may be considered "to

show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to

work. . . ." 20 C.F.R. § 404.1513(d)(1).  Among the factors to be considered in evaluating the

opinions of "other sources" are the length of time and frequency of treatment, consistency with

other evidence, the degree to which the source presents relevant evidence to support the opinion,

how well the opinion is explained, whether the source has a special expertise and any other

factor supporting or refuting the opinion.  SSR 06-03p.

The decision of the ALJ considered the factors required by SSR 06-03p.  By declining to

apply controlling weight to CNP Freeman's opinion based on her omission of supporting

objective medical evidence, the ALJ did not err as a matter of law.  *See* 29 C.F.R. §

404.1527(d)(2).  CNP Freeman's physical examination, however, did not yield abnormalities that

tended to support her conclusion.  CNP Freeman found some limitations in Plaintiff's range of

motion, mild to moderate neck tenderness, minimal if any swelling.  (Tr. 234-85).  She did not

otherwise describe significant neurological deficits.  *Id.*  Given these relatively minimal findings,

the ALJ could reasonably conclude that CNP Freeman's opinion was premised on Plaintiff's

subjective complaints rather than objective medical findings.  (Tr. 17).  20 C.F.R. § 404.1508.

*See McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995) (ALJ reasonably discounted physician's opinion where claimant's subjective complaints were unsupported by objective medical evidence).

Given the deficiencies in CNP Freeman's opinion and the absence of opinions from other treating sources, the ALJ put more weight in the opinions of state agency physicians, Drs. McCloud and Drew.  Dr. McCloud completed a physical RFC assessment at the request of the state agency and found that Plaintiff could perform a limited range of light work with some postural and environmental limitations. (Tr. 219-26).  20 C.F.R. § 404.1527(f)(2)(I) ("ALJs must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence.").  *See McGrew v. Comm'r of Soc. Sec.*, 2009 U.S. App. LEXIS 18765 at *16; 2009 WL 2514081 at *5 (6th Cir. 2009) (As required by § 404.1527(f)(2)(I), the ALJ properly relied on the opinions of two state agency physicians).

Dr. McCloud's opinion was based on clinical tests and the findings of the examining physician.  For example, Dr. McCloud referenced Dr. Provasznik's July 2007 examination of Plaintiff.  (Tr. 220).  As mentioned earlier, Dr. Provasznik reported that Plaintiff's examination showed no muscle spasms or atrophy, with negative straight leg raising and toe-heel walking. (Tr. 304-06).  Dr. McCloud also noted Plaintiff's May 2007, stress test that showed an ejection fraction of 63%. (Tr. 205, 212-13).  20 C.F.R. § 404.1529(c)(3).  Dr. McCloud's opinion was also consistent with other objective medical evidence in the record.  *See* 20 C.F.R. § 404.1527(d)(4).  For example, a July 2007, lumbar spine x-ray showed no abnormalities (Tr. 218), and an October 2008, lumbar MRI showed only a tiny disc herniation with no evidence of stenosis or narrowing.  (Tr. 361).

Plaintiff next contends the ALJ erred by failing to consider the combination of his impairments. In reviewing his argument, it appears Plaintiff is actually arguing that the ALJ failed to find his alleged depression, possible cancer, heart surgery and peripheral neuropathy as severe impairments. Plaintiff cites to Dr. Ansinelli's letter of May 30, 2007, where he felt that the pain in Plaintiff's legs was most likely diabetic neuropathy. (Tr. 332). Plaintiff further argues that CNP Freeman reported peripheral neuropathy in almost every note. As to his alleged depression, Plaintiff cites to his testimony in that he has anxiety and depression. (Tr. 234, 236).

While it is clear the ALJ must consider the combined effect of Plaintiff's impairments in assessing her eligibility for disability benefits, *See Barney v. Secretary of Health & Human Services*, 743 F.2d 448, 453 (6th Cir. 1984), there is substantial evidence in the record establishing the ALJ did so in this case. *See Loy v. Secretary of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir.1990)(per curiam); *Gooch v. Secretary of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)(per curiam), *cert. denied*, 484 U.S. 1075 (1988). The ALJ found Plaintiff suffered from multiple impairments and analyzed each of Plaintiff's impairments after carefully considering the entire record. (Tr. 11-13). The ALJ's finding that Plaintiff's combination of impairments (plural) did not meet or equal the Listings (Tr. 13) is sufficient to show that the ALJ had considered the effect of the combination of impairments. *See Loy,* 901 F.2d at 1310 (ALJ's specific reference to the claimant's "combination of impairments" at step 3 satisfied the ALJ's duty to consider the combined impact of impairments.); *Gooch,* 833 F.2d at 592.

The ALJ went on to analyze Plaintiff's mental impairments, and his decision reflects that he also considered all of Plaintiff's impairments in combination in formulating Plaintiff's RFC. (Tr. 12-13).

The Court next turns to Plaintiff's contention that the ALJ purportedly committed error when assessing his credibility and subjective reports of pain.

An ALJ's findings concerning the credibility of a claimant's testimony about his or her pain or other symptoms "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.* The Commissioner, speaking through the Rulings, mandates in part:

> The reasons for the credibility finding must be grounded in evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible. ' It is also not enough for the adjudicator to simply recite the factors that are described in the regulations for evaluating symptoms. The determination must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Social Security Ruling 96-7p, 1996 WL 374186.

"'There is no question that subjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record.'" *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (quoting *Jones v. Comm'r. of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (other citation omitted). Yet, "'an ALJ is not required to accept a claimant's subjective complaints and may ... consider the

credibility of a claimant when making a determination of disability.'" *Cruse*, 502 F.3d at 542 (quoting *Jones*, 336 F.3d at 476)(other citation omitted). "Notably, an ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse*, 502 F.3d at 542 (citations omitted). An ALJ's credibility determinations must be supported by substantial evidence. *Id*.

Plaintiff contends, contrary to the ALJ's findings, that objective medical evidence supported his testimony, citing to his diagnosis of rotator cuff tendinopathy and bursitis (Tr. 360); a MRI showing herniation at L5/S1 (Tr. 361); and that Dr. Ansinelli found atypical angina and performed catherization in May 2007. (Tr. 201). Of course, the presence of a diagnosis alone is never conclusive evidence of disability. *See, Young v. Secretary of Department of Health and Human Services,* 925 F.2d 146 (6th Cir. 1990). The mere diagnosis of an impairment does not indicate the severity of the condition nor the limitations, if any, that it imposes. *Id.*

Contrary to Plaintiff's contentions, substantial evidence supports the ALJ's credibility determination. The ALJ reasonably found that certain factors undermined Plaintiff's credibility. *See* Tr. 13-17. The ALJ correctly recognized that during Plaintiff's testimony at the administrative hearing, that when asked about his ability to sit, stand and walk, Plaintiff testified that he could walk one or two blocks at most, while admitting that he did not require any assistive device for walking. (Tr. 29-30).

Next, the ALJ analyzed Plaintiff's subjective reports of pain as follows:

Severe chronic pain will often result in certain observable manifestations such as loss of weight due to loss of appetite from incessant pain (or weight gain due to inactivity from pain), muscular atrophy due to muscle guarding, muscular spasms, the use of assistive devices, prolonged bed rest, or adverse neurologic signs. In

17

the present case, no such signs exist. The record documents that the claimant has lost a significant amount of weight due to uncontrolled diabetes, not as a result of incessant pain. His diabetic diet and weight loss was to help treat his diabetes. The record fails to demonstrate the presence of any pathological clinical signs, significant medical findings, or any neurologic abnormalities that would establish the existence of a pattern of pain of such severity as to prevent the claimant from engaging in any work on a sustained basis.

(Tr. 15, citation to record omitted). Finally, the ALJ considered Plaintiff's daily activities. (Tr. 34-36). Plaintiff testified that he is able to perform some household chores, such as sweeping the floor and washing the dishes. *Id.* He reported that he is able to prepare meals and drive. *Id.* He asserted that he drives his parents around. *Id.* The ALJ also considered Plaintiff's ability to perform heavy work as an auto body repairman during the time he was allegedly disabled which undermines Plaintiff' subjective complaints of disability.

Under these circumstances, the ALJ did not err by rejecting Plaintiff's subjective complaints and allegations of disabling pain.

Plaintiff's *Statement of Errors* concludes with a summary argument that for the reasons detailed in the first three assignments of error, the ALJ's decision was not supported by substantial evidence.

It is not the Court's role to sift through the facts and make a de novo determination of whether a claimant is disabled. The ALJ, not the Court, is the finder of fact. *Siterlet v. Secretary of Health & Human Services*, 823 F.2d 918, 920 (6th Cir. 1987). So long as the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. §405(g). *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In a close case, where there is substantial evidence supporting the ALJ's resolution of the disputed facts, the Court must affirm even if it

would likely have resolved the disputed facts in plaintiff's favor had it been a trier of fact.  *Nunn v. Bowen*, 828 F.2d 1140, 1144 (6th Cir. 1987); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  There is a large zone of choice where the Commissioner's decision to deny benefits is supported by substantial evidence, and, had the Commissioner granted benefits, that decision also would have been supported by substantial evidence.  *Mullen v. Secretary of Health & Human Services*, 800 F.2d 535, 548 (6th Cir. 1986) (en banc).  In close cases, the Commissioner's decision must be affirmed so long as there is substantial evidence supporting the Commissioner's fact determinations "because there is a 'zone of choice' within which the Commissioner can act, without fear of court interference." *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

For the reasons stated above in connection with Plaintiff's first three assignments of error, the Court concludes that there is substantial evidence supporting the ALJ's decision denying benefits.

**CONCLUSION**

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence.  *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982).  The evidence "must do more than create a suspicion of the existence of the

fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939).  The Commissioner's decision in this case is supported by such evidence.

Because substantial evidence supports the decision of the ALJ, the Court recommends that his decision be **AFFIRMED** and that this case be **DISMISSED** from the docket of the Court.

Date: November 19, 2010                    s/ J. Gregory Wehrman
                                           J. Gregory Wehrman
                                           United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS
R&R**

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).