UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TONY WESLEY SLONE,

                Plaintiff

v.                                            Case No. 1:09-cv-705-HJW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant

### ORDER

This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (doc. no. 15), plaintiff's objections thereto (doc. no. 16) and defendant's response (doc. no. 18). Plaintiff, a Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") claimant, brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying plaintiff's application for benefits. The Magistrate Judge recommended that substantial evidence supports Commissioner's findings and that the Commissioner's final decision should be affirmed. Upon review of the record, including the objections and response, this Court agrees with the Magistrate Judge's recommendations and will affirm the Commissioner's final decision for the following reasons:

**I. Background**

Plaintiff was born in 1960, has a high school education, is married with two adult children, has work experience in auto body repair, and has smoked two packs

of cigarettes daily for thirty years (TR 264).¹ Plaintiff's last insured date was December 1996 (TR 128). Plaintiff did not file his DIB and SSI applications until May of 2007, alleging disability as of December 13, 1996, due to alleged "back problems, breathing problems, and diabetes" (TR 143). He later alleged other problems, including blurred vision, carpal tunnel syndrome, hypertension, history of heart surgery, possible cancer spots, right rotator cuff injury, and mild depression (TR 11-12, 15, 17). Plaintiff's applications were denied initially and upon reconsideration. Upon plaintiff's request, an administrative law judge ("ALJ") held an evidentiary hearing on February 10, 2009. Plaintiff was represented by counsel and testified at the hearing before ALJ Steven A. De Monbreum. A vocational expert, Annmarie E. Cash, also appeared and testified at the hearing.

On April 1, 2009, the ALJ issued a decision finding plaintiff not disabled. Specifically, the ALJ found that 1) plaintiff had not worked since May 22, 2007; 2) that he had severe impairments of "degenerative disc disease, rotator cuff tear, and diabetes with neuropathy" and that the remaining alleged impairments were "non-severe"; 3) that plaintiff's impairments or combination of impairments did not meet any listing; 4) that plaintiff retained the RFC for light work within his restrictions; 5) that plaintiff could not perform his past work (which was "medium to heavy"); that plaintiff was a "younger person" under the regulations; 7) that plaintiff had a high school education and communicated in English; 8) transferability of job skills was

---

¹Plaintiff testified he had been smoking only half a pack for several months in a laudable effort to quit smoking (TR 34).

not a material issue; 9) that considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could perform; and 10) that plaintiff has not been disabled since May 22, 2007, the date the application was filed (TR 11-19).

## II. Issues Presented

Plaintiff objects that: 1) the AL did not properly consider Nurse Practitioner Freeman's residual functional capacity ("RFC") opinion; 2) the Magistrate Judge did not adequately address the ALJ's alleged failure to consider the combined impact of plaintiff's impairments; and 3) the ALJ erred in finding plaintiff not fully credible (doc. no. 16 at 1-2).

## III. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); White v. Comm'r of Soc. Sec., 572 F.3d 272, 281 (6th Cir. 2009). The ALJ's decision must be affirmed if the Court finds that the decision is supported by substantial evidence in the record as a whole. Kirk v. Sec. of HHS, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson, 402 U.S. at 401). The ALJ's decision may not be reversed merely because substantial evidence would also support a different decision. Casey

**v. Sec. of HHS**, 987 F.2d 1230, 1233 (6th Cir. 1993).

**IV.  Analysis**

In reviewing the record to ascertain whether substantial evidence supports the Commissioner's final decision, the Court observes that plaintiff has entirely failed to present any evidence that his alleged disability arose before his "insured status" expired in 1996.

In order for a claimant to be eligible for disability benefits under Title II of the Social Security Act, plaintiff must have had disability insured status in the quarter in which he became disabled.  See 20 C.F.R. §404.131; 42 U.S.C. §423(a) and (c); 20 C.F.R. §404.101.  This means that the plaintiff was required to prove that he was disabled on or before the date his "disability insured status" expired in  December 1996.  Plaintiff has not done so, and in fact, has candidly indicated that  he worked on a cash basis doing auto body repair until April 2007.  His medical records also reflect that his diabetes was first diagnosed in 2007 (TR 307) and that he had first "noticed" problems over the last year (TR 255).  It is undisputed that plaintiff did not have disability insured status in 2007.

None of the medical records submitted by plaintiff pertain to the last quarter of 1996.  For example, although plaintiff claims disability since December 13, 1996, his medical records indicate that, as of May 15, 2007, he had only reported numbness and tingling in his feet for the past six  weeks "from time to time" (TR 264). The patient history provided to plaintiff's physician for the heart catheterization in 2007 indicates that plaintiff had a only "4-5 month history of a sticking sensation

in his chest with associated shortness of breath" (TR 205). In fact, the record is entirely devoid of any medical documentation relating to the alleged onset date in 1996. The Court will next discuss the plaintiff's objections.

A. Whether the ALJ properly considered Nurse Freeman's RFC opinion

The ALJ set forth in his decision the various restrictions that Nurse Practitioner Freeman indicated for the plaintiff (TR 17, 244). The ALJ then fully explained why Nurse Freeman's opinion as to plaintiff's RFC deserved limited weight. Although the plaintiff urges that the ALJ should have given controlling weight to the nurse's opinion, it is not entitled to the deference afforded to the opinion of a treating physician under the regulations. 20 C.F.R. §§ 404.1513 and 416.913; SSR 06-03p. The ALJ correctly pointed this out in his decision (TR 17).

Additionally, the ALJ specifically indicated that Nurse Freeman's "opinion has been considered and given very little weight because her assessment of limitations is too restrictive. . . [and] is based mostly on claimant's self report of limitations" (TR 17). For example, the Commissioner aptly points out that despite plaintiff's complaints of back pain, "imaging studies did not show any progressive declining changes. . . a July 2007 lumbar spine x-ray showed no abnormalities. . . , and an October 2008 lumbar MRI showed only a tiny disc herniation with no evidence of stenosis or narrowing" (doc. no. 18 at 2, citing TR 14, 218, 361).

As the Magistrate Judge correctly noted, Nurse Freeman's physical examination of plaintiff did not reflect the degree of physical problems that would support her conclusions of "extremely limited" functional abilities for plaintiff (TR

244). The ALJ also explained that the conservative treatment recommended for plaintiff was not consistent with the severe degree of limitations indicated in Nurse Freeman's RFC assessment (TR 17).

The Commissioner correctly points outs that Nurse Freeman's restrictive RFC assessment was not supported by the evidence. (doc. no. 18 at 2, citing TR 234-285) Her treatment notes indicate only mild to moderate neck tenderness, minimal if any swelling, no significant neurological deficits, and only slight limits in range of motion. On the printed form for treatment notes, the question "Are you having pain?" appears and the answer "No" is repeatedly circled (TR 237, 245, 249, 264). Given the minimal findings in these notes, the ALJ properly gave Nurse Freeman's RFC assessment of extreme limitations "minimal weight."

The Court also observes that plaintiff does not actually discuss any details of the ALJ's decision or the Magistrate Judge's recommendations. Plaintiff's generalized objection is without merit. The record as a whole reflects that the ALJ's decision was supported by substantial evidence. <u>Heston v. Comm'r of Soc. Sec.</u>, 245 F.3d 528 (6th Cir. 2001)("Judicial review of the Secretary's findings must be based on the record as a whole").

**B. Whether the Magistrate Judge adequately addressed the ALJ's alleged failure to consider the combined impact of plaintiff's impairments**

Plaintiff next contends that the Magistrate Judge "did not adequately address the ALJ's alleged failure to consider the combined impact of Mr. Slone's impairments" (doc. no. 16 at 1). Of course, the ALJ (not the Magistrate Judge) is the

fact finder here.  As to whether the ALJ considered the combined effects of plaintiff's impairments, the ALJ specifically indicates in his decision that he <u>did</u> consider the combined effects of plaintiff's impairments (TR 13 at Finding 3).  At the hearing, the ALJ heard the oral argument of counsel that "we believe Mr. Slone is disabled due to a combination of his problems" (TR 25).  In his decision, the ALJ discussed in detail all of the plaintiff's allegedly disabling conditions, including the ones found not "severe."  The ALJ discussed his findings at steps 2-4 regarding all of plaintiff's alleged physical and mental impairments, and any resulting limitations (TR 11-17).  Plaintiff's unsupported allegation does not establish any error in the ALJ's decision.

In his objection, plaintiff presents no developed argument regarding the ALJ's analysis at step 2 of the sequential process. To the extent the plaintiff's objection is premised on the ALJ's finding that plaintiff's neuropathy, heart surgery, and alleged depression were <u>not</u> severe impairments, the record reflects that the ALJ <u>did</u> find plaintiff's "diabetes with neuropathy" to be a severe impairment for purposes of the regulations (TR 11 at Finding 2).

The ALJ discussed the medical evidence at considerable length regarding the other two (TR 11-15) and found they were not "severe" impairments for purposes of the regulations.  Plaintiff did not allege depression in his disability applications.  The ALJ nonetheless discussed any possible mental impairment, even though plaintiff had not sought any mental treatment (TR 16). As the Magistrate Judge noted, state agency reviewing psychologist Steven Meyer, Ph.D., completed a Psychiatric Review Technique on May 22, 2007 and indicated that plaintiff had only "mild" difficulties

with no episodes of decompensation (TR 311-324). Plaintiff indicates his disagreement with the ALJ's finding that his impairment was not severe, but does not point to any evidence or discuss any alleged short-coming in the ALJ's analysis.

With respect to plaintiff's alleged heart problem, the record reflects that plaintiff's had a catheterization procedure that revealed normal wall motion, normal sized ventricle, normal sized vessels, no lesions, and only "very minor coronary disease" (TR 201, 332). On May 30, 2007, treating physician Dr. Ansinelli indicated that he had reassured plaintiff that "his symptoms are non-cardiac" and that the "stress test was falsely abnormal" (TR 201).[2] On Nov 10, 2008, Dr. Erik Fraly, M.D., reported "no acute aortic abnormality" and "mild emphysematous changes" (TR 376). On November 12, 2008, Dr. Alvin Schwartz, M.D., reported after plaintiff's chest X-ray that "no acute cardiopulmonary process or significant abnormality is identified"(TR 358). The ALJ appropriately found plaintiff's alleged heart condition was not a "severe" impairment within the meaning of the regulations.

The plaintiff has not shown that the ALJ should have found these impairments to be severe or that the ALJ failed to consider the combined effect of plaintiff's impairments. The Court agrees with the Magistrate Judge's recommendation that substantial evidence supports the ALJ's decision.

---

[2]Plaintiff was also evaluated for "arterial sufficiency" due to his complaints of knee pain. The results of the study Indicated "this is a normal study with normal ABI and Dioppler waveform analysis" (TR 204). Although plaintiff had on occasion complained of blurry vision, dizziness, and weakness (TR 150), the records reflect that these symptoms largely occurred when plaintiff did not take his diabetes medication (TR 233, 245, 406, 413). The ALJ noted that plaintiff's visual acuity was 20/40 without glasses (TR 15).

### C. Whether the ALJ erred in finding plaintiff not fully credible

Finally, the plaintiff complains in a few sentences that the ALJ should have found him fully credible because "objective evidence shows a herniation at L5-S1 [and he has] a diagnosis of tendinopathy (sic) and bursitis" (doc. no. 16 at 2). A "diagnosis" says nothing about the severity of an impairment or resulting functional limitations. With respect to bursitis, the ALJ discussed the evidence showing that plaintiff had a reduced range of motion of the right shoulder, and noted the absence of any evidence regarding the left shoulder (TR 15, citing Exhibits 12F/17-18, 14F/12). The ALJ nonetheless gave the plaintiff the benefit of the doubt and included restrictions against overhead reaching for both arms in his hypothetical questions to the VE (TR 42).

After considering the evidence, the ALJ found that "the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that plaintiff's allegations of resulting limitations were not entirely credible (TR 14). See Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 652 (6th Cir. 2009) ("[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ"). The Magistrate Judge recommended that "substantial evidence supports the ALJ's credibility determination" (doc. no. 15 at 17).

In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant. Walters, 127 F.3d at 531(citing Kirk, 667 F.2d at 536). "An individual's statements as to pain or other symptoms will not alone establish that [he is] disabled." Id. (quoting 20 C.F.R. § 404.1529(a)). "[S]ubjective complaints of a

claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record." Cruse v. Commissioner of Soc. Sec., 502 F.3d 532, 542 (6th Cir. 2007) (quoting Jones, 336 F.3d at 475-76). "However, an ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability." Id.

      The ALJ noted the lack of treatment for any back pain, and discussed the results of medical tests, including that X-rays of the lumbar spine in July 2007 revealed no abnormalities, that "imaging studies have not shown any progressive declining changes," and that an October 2008 MRI showed only a "tiny" herniation with no evidence of spinal stenosis at any level (TR 14). The ALJ indicated that physical examinations reflected that plaintiff could walk heel to toe and had no trouble getting up sitting and supine positions (TR 14). Consulting examiner Dr. David Provaznik, M.D., indicated that tests on plaintiff's lumbosacral spine yielded normal results, specifically the vertebral bodies, disk spaces, posterior elements, and sacroiliac joints were all normal (TR 228). He also indicated plaintiff was negative for the straight leg raising test (TR 308). The ALJ explained that the medical evidence did not substantiate the degree of limitation claimed by plaintiff (TR 14). The ALJ considered the evidence of record and found plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms to be less than fully credible.[3] 20 C.F.R. § 404.1529(c).

---

[3] The ALJ only discounted plaintiff's subjective complaints to the extent they were inconsistent with the RFC (TR 14). In his hypothetical questions to the VE, the ALJ included various restrictions, such as no overhead reaching, climbing of

The ALJ also considered the plaintiff's self-reported daily activities including washing some dishes, sweeping, taking out the trash, driving his parents places, and grilling dinner for 30 minutes (TR 26, 34, 179). Plaintiff reported his back pain is worse when he cuts the grass (TR 307). Although he testified that he does not have a drivers license due to a DUI "about five years ago," he reported that he still drives "upwards of one hour per day" and takes his parents places (TR 26,179).

In addition, other evidence of record was relevant to finding plaintiff less than fully credible. For example, with respect to plaintiff's work experience, his wage history showed little or no earnings since 1996. The ALJ asked plaintiff at the hearing how he had been supporting himself (TR 26). Plaintiff indicate that he had been making $500-600 per month in auto body repair work on a cash basis "three or four days a week," although these were not full days (TR 26-28, 127, 144-45, 148, 262). He acknowledged that he had not reported these earnings and that he had worked during the period of alleged disability (TR 28, 35, 143, 277 indicating he had been an auto "body man" for the past 20 years and was used to "making good money"). Plaintiff indicated that this work involved heavy lifting, but that he had not done any such work for about a year (TR 28). He testified he could lift 30-40 pounds at the most now (TR 29). The ALJ noted that plaintiff's testimony "suggests the ability to work . . . despite claims of disabling back pain, shoulder pain, and diabetic neuropathy" (TR 11). See Walters, 127 F.3d at 531 ("Discounting credibility to a

---

ladders, kneeling, crouching and crawling," as well as lifting restrictions (TR 42-45). Plaintiff has not challenged the accuracy of the hypotheticals. Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir.1994) (the hypothetical must accurately describe claimant).

certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

The ALJ based his credibility determination on the overall evidence of record. It is the ALJ's job, as fact-finder, "to pass upon the credibility of the witnesses and weigh and evaluate their testimony." <u>Myers v. Richardson</u>, 471 F.2d 1265, 1267 (6th Cir. 1972); see also, <u>Walters</u>, 127 F.3d at 528.  The Court finds that the ALJ's credibility findings are well supported by substantial evidence in the record.

## V.  Conclusion

Upon *de novo* review of the record, especially in light of plaintiff's objections, the Court finds that the Commissioner's final decision is supported by substantial evidence in the record.  Accordingly, the final decision of the Commissioner denying plaintiff Disability Insurance Benefits and Supplemental Security Income benefits is hereby AFFIRMED.

This case is TERMINATED on the docket of this Court.

IT IS SO ORDERED.

                                                      s/HermanJ. Weber  
                                        Herman J. Weber, Senior Judge  
                                        United States District Court